WILLIAM W. STONE et al., Respondents *v.* WILLIAM C. BROWN-ING et al., Appellants.

The mere receipt of the goods by the vendee will not take a sale out of the operation of the statute of frauds; there must be some act or conduct upon his part manifesting his intention to accept them absolutely and unconditionally in full performance of the contract of sale.

Where, therefore, in an action to recover the purchase-price of goods alleged to have been sold, the question was litigated as to whether a receipt of the goods by the vendee was absolute or only for the purpose of ascertaining if they conformed to sample, and the testimony tended to show the latter,—*Held*, that it was error for the court to refuse to charge that if the jury found the defendants never intended to and did not accept the goods then their verdict should be for defendants.

(Argued May 20, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of plaintiffs entered on a verdict.

The action was brought to recover the balance of the purchase-money of a quantity of goods, claimed by the plaintiffs to have been sold and delivered by them to the defendants, under a verbal contract of sale.

The defendants denied the allegation in the complaint in reference to the sale and delivery. They also set up, among other defences, that the goods were sold by sample, with an

express warranty that the goods exhibited were fair and correct samples of the whole, and also that the sale was within the statute of frauds and void.

A motion was made to dismiss the complaint on those, among other grounds, when the plaintiffs rested their case, and again at the close of the evidence. The motions were denied.

The defendants' counsel then requested the court to charge the jury upon several distinct propositions, one of which was in the following terms:

" Ninth. If you find the defendants never intended to, and did not in fact, accept the goods delivered, then your verdict should be for the defendants," which request was refused. Exceptions were taken to the denial of the motions to dismiss the complaint and to the refusal to charge in accordance with the above request.

The jury found a verdict in favor of the plaintiffs and a judgment was entered thereon accordingly. Other facts appear in the opinion.

*John K. Porter* for the appellants. There was no such delivery of the goods and acceptance by defendants as takes the sale out of the operation of the statute of frauds. (*Brand* v. *Focht*, 3 Keyes, 409 ; *Shindler* v. *Houston*, 1 Coms., 269.) The court erred in submitting to the jury the questions whether the sale was by sample, and whether the goods were inferior to the sample and unfit for use. (*Outwater* v. *Dodge*, 7 Cow., 87; *Mead* v. *Bunn*, 32 N. Y., 275 ; *Hoffman* v. *Ætna Ins. Co.*, 32 id., 405 ; *Hunt* v. *Bennett*, 19 id., 173 ; *Vedder* v. *Fellows*, 20 id., 129 ; *Hoe* v. *Sanborn*, 21 id., 552 ; *Stuart* v. *Simpson*, 1 Wend., 376 ; *Wilson* v. *Williams*, 12 id., 109 ; *Fort* v. *Collins*, 21 id., 109 ; *Jansen* v. *Agler*, 23 id., 480 ; *Ruded* v. *Davis*, 3 Hill, 287 ; *McMartin* v. *Taylor*, 2 Barb., 356 ; *Porter* v. *Hovens*, 37 id., 343 ; *Thomas* v. *Dickinson*, 23 id., 431 ; *People* v. *Cook*, 4 Seld., 74 ; *People ex rel., etc.*, v. *Board of Police*, 14 Abb., 158 ; *Garlet* v. *Ross*, 15 id., 251 ; *Harding* v. *Barney*, 7 Bosw., 353.) Upon the

undisputed facts defendants were entitled to return the goods, on learning they were inferior to the samples and unfit for use. (2 Kent's Com., 481; Story on Conts., § 540; *Beirne* v. *Dord*, 1 Seld., 98; *Boorman* v. *Jenkins*, 12 Wend., 566; *Allen* v. *Schuchardt*, 1 Am. L. Reg., 13; *Freeman* v. *Clute*, 3 Barb., 424; *Brower* v. *Lewis*, 19 id., 574.)

*William Tracy* for the respondents. There was an actual delivery of the goods to defendants, and the condition of the statute of frauds was complied with. (*Ives* v. *Humphreys*, 1 E. D. Smith, 196; *De Fouclear* v. *Shottenkirk*, 3 J. R., 171; 2 Kent's Com., 492; *Smith* v. *Lynes*, 5 N. Y., 41; *Corlies* v. *Gardiner*, 2 Hall, 345; *Yale* v. *Coddington*, 21 Wend., 175; *Sands* v. *Taylor*, 5 J. R., 395. The sale of the goods at private sale was proper, and the delay in selling was for defendants' benefit. (*Sands* v. *Taylor*, 5 J. R., 393, 404 *et seq.*; *Crooks* v. *Moore*, 1 Sand., 297; *Conway* v. *Bush*, 4 Barb., 564; *Bogart* v. *Regan*, 1 E. D. Smith, 590.) Plaintiffs, as consignees, were proper parties to bring the action. (*Grinnell* v. *Schmidt*, 2 Sand., 706; *Minturn* v. *Main*, 7 N. Y., 220.) The instructions of the court as to the rule in sales by sample were correct. (*Hyland* v. *Sherman*, 2 E. D. Smith, 234; *Salisbury* v. *Stainer*, 19 Wend., 197; *Hargous* v. *Stone*, 5 N. Y., 73.)

LOTT, Ch. C. It must be assumed that the jury, under the instructions given to them by the court, have, by their verdict in favor of the plaintiffs, found either that there was neither an express warranty nor a sale of the goods by sample, or that they conformed to the warranty, if there was one, and corresponded with the samples exhibited if the sale was by sample.

The defendants are therefore precluded from any relief on those grounds.

They were, however, entitled to have the jury instructed as asked in the ninth request or proposition submitted to the court.

Although the goods were delivered by the plaintiffs to the defendants, it was a question strongly litigated on the trial, whether they were received absolutely as their property or only for the purpose of ascertaining whether they conformed to the sample shown them. It appears to be conceded by the plaintiffs that the defendants were allowed a week to make an examination of them for the purpose of seeing whether any portion thereof was so defective as to entitle them, according to the custom of the trade, to make a return thereof, and have a deduction made, on account of the same, in the amount of the note to be given therefor. Under this conflict of evidence, the defendants were entitled to have the question determined by the jury, whether the goods had in fact been "*accepted*" by them with the intention of taking possession as owners.

The statute of frauds requires that "the buyer shall accept and receive" a part of the goods covered by the contract for the sale thereof.

The mere receipt is not a compliance with that requirement. There must be some act or conduct on the part of the buyer indicating and manifesting his intention in receiving them to accept them absolutely and unconditionally in execution and full performance of the contract of sale. (See *Shindler* v. *Houston*, 1 Comst., 261, etc.; *Brand* v. *Focht*, 3 Keyes, 409; *Caulkins* v. *Hellman*, 47 N. Y. [2 Sickels], 449, etc.)

The refusal to charge in conformity to the above request was therefore an error which calls for and requires a reversal of the judgment and a new trial, with costs to abide the event.

EARL, C. Upon the trial the principal questions litigated were, whether the cloth was sold by sample with a warranty, and whether it corresponded with the sample. These questions were submitted to the jury and were really the only questions submitted to them, and as to them the decision of the jury cannot be disturbed.

I am of opinion, however, that the contract of sale was

void by the statute of frauds. There was no part payment of the purchase-money nor note or memorandum of the contract. Hence there was no compliance with the statute unless the defendants both accepted and received the cloth purchased or some of it. It was not sufficient to answer the statute that the cloth was delivered to the defendants; they must also have accepted it. (*Cross* v. *O'Donnell*, 44 N. Y., 661.) A delivery of property to satisfy the requirements of the statute of frauds must be a delivery by the vendor with the intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with the intent of taking possession as owner. (*Brand* v. *Focht*, 3 Keyes, 409.) Judge Wright, in *Shindler* v. *Houston* (1 N. Y., 269), says: "The best considered cases hold that there must be a vesting of the possession of the goods in the vendee as absolute owner, discharged of all lien for the price on the part of the vendor, and an ultimate acceptance and receiving of the property by the vendee so unequivocal that he shall have precluded himself from taking any objection to the quantities or quality of the goods sold." In *Bell* v. *Boment* (9 M. & W., 41), Parke, B., says: "To constitute delivery, the possession must have been parted with by the owner, so as to deprive him of the right of lien." In *Phillips* v. *Bistolli* (2 B. & Cr., 511), it is said *per curiam :* "In order to satisfy the statute, there must be a delivery of the goods by the vendor with the intention of vesting the right of possession in the vendee, and there must be an actual acceptance by the latter with an intention of taking the possession as owner." In *Kent* v. *Huskinson* (3 Bos. & Pul., 233) it was held that the acceptance must be an ultimate acceptance, and such as completely affirms the contract. In *Smith* v. *Surman* (9 B. & Cr., 561), Parke, B., says "the later cases have established that unless there has been such a dealing on the part of the purchaser as to deprive him of any right to object to the quantity or quality of the goods or to deprive the seller of his right of lien, there cannot be any part acceptance." (See also *Howe* v. *Palmer*, 3 B. & Ald.,

321; *Hanson.* v. *Armitage,* 5 B. & Ald., 557; Story on Sales, § 276.)

Within the principles laid down in the above authorities, there was not in this case any ultimate or final acceptance of the cloth by the vendees. Upon this point there is no conflict in the evidence. There was not sufficient opportunity to examine the cloth while it was in the store of the plaintiffs, and hence it was arranged that it should be taken to the store of the defendants, and they were to examine it, and if they were satisfied as to the quantity and quality of the cloth, then they were to give their notes for the purchase-price. They did take the cloth and examine it, and after the examination refused to accept it. There is no evidence whatever that they ever accepted it, or intended to accept it. Bliss, one of the plaintiffs, testified that Button, one of the defendants, at the time of the negotiation for the purchase of the cloth, stated that he could not examine the cloth where it was, and that it was the understanding that he should take the cloth and examine it all before the week was out and then give defendants' notes for the same. Stone, another of the plaintiffs, testified the defendants were not ready to receive the goods then, but that the understanding was that they were to take them, and before Wednesday of the next week examine them, for the purpose of seeing whether they had the quantity and quality they bargained for, and were then to give their notes for them. Foy, also one of the plaintiffs, testified that he wrote at the bottom of the bill of sale which was sent to the defendants the words "to be examined by Wednesday or Thursday of next week." We thus have the testimony of all the plaintiffs concurring that the defendants received the goods only for examination, and the testimony on the part of the defendants on the same point is still stronger. They did not take possession of the goods as owners, and it was not the intention of the parties that the title to them should vest in the defendants before they examined them and gave their notes. In other words, it was not an executed sale. And such was the view taken of the case

by the judge at the circuit in his charge to the jury. He charged the following propositions :

"If you find that these goods were warranted and that they did not conform to the representations made by the plaintiffs, you will find a verdict for the defendants."

"If you find that the plaintiffs warranted the balance of the goods to correspond as to quality with the four cases shown to the defendants on the sale, and that those delivered did not so correspond, then the defendants were not bound to accept them."

"If you find that the goods were sold by sample, and that the bulk did not correspond with the sample, and further, that the defendants were induced to keep the goods over the week, or to continue the examination of the goods longer than they would have done but for the acts of the plaintiffs, then the defendants had a right to return the goods, and your verdict should be for the defendants."

"Although the defendants agreed to examine these goods within one week, yet if the plaintiffs requested them during the week to continue to examine more of the goods, then defendants were entitled to a reasonable time to make such further examination, and if such examination took more than the balance of week, the defendants were still entitled to return them, if at the close of the examination they proved to be inferior to the samples."

It will be seen that the judge treated this as an executory contract of sale, under which the defendants had the right to refuse to accept the goods if they did not conform to the warranty, in case the jury found one had been made. He assumed that the defendants had not accepted the goods, but he charged the jury in substance that if the defendants purchased without warranty, then they were bound to accept; and if they purchased with a warranty and the goods conformed to the warranty, then they were also bound to accept; and if there was a warranty and the goods did not conform to it, then the defendants were not bound to accept. It was plainly assumed by the judge, that upon some theory there

was a valid executory contract of sale, not that there was an executed sale. Because if the defendants had accepted these goods, and the title had vested in them and the sale had thus become executed, the defendants would have had no right to return them for a breach of warranty and escape entirely any recovery. In such case the defendants would have been obliged to have retained the goods, and could only have recouped or counterclaimed their damages for a breach of warranty. That I am right in these observations as to the charge appears more clearly by the refusal of the judge to charge the following request of the defendants' counsel : " If you find the defendants never intended to and did not in fact accept the goods delivered, then your verdict should be for the defendants." To the refusal to charge as thus requested there was an exception. This shows quite clearly that the judge tried the case upon the theory of an executory sale, valid and binding (unless there was a breach of warranty), without acceptance. In this refusal to charge there was manifest error, because without acceptance there was no valid contract of sale, and the defendants had the right to reject and return the goods without any liability whatever to the plaintiffs.

Another view of this case will also show that the statute of frauds was not complied with. There was at least no such delivery of these goods as deprived the plaintiffs of their lien for the purchase-price. When the goods were returned to the plaintiffs they claimed a lien on them for the purchase-price, and refused to receive them except as lien holders, and they sold them to satisfy this lien, and they claim in this action to recover the balance of the purchase-price not satisfied by a sale of the property. It is unnecessary to inquire whether, upon the facts as they appeared upon the trial, the plaintiffs had this lien or not. They claimed it, acted upon it, and alleged it in their complaint. They cannot now be heard to deny it.

The authorities above cited show that a lien for the pur-

chase-price is inconsistent with such a delivery and ultimate acceptance of goods as to satisfy the statute of frauds.

The judgment should therefore be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.