## DETERMINED IN THE

# FIFTH DEPARTMENT,

### AT

## GENERAL TERM,

### October, 1884.

---

IN THE MATTER OF THE ASSIGNMENT BY DE WITT C. HOOVER TO GEORGE H. HOOVER FOR THE BENEFIT OF CREDITORS.

<div style="float:right">

| | |
|---|---|
| 33h | 553 |
| 37 Mis¹214 | |

</div>

33h 553
84 AD 155

*Statute of frauds — when an acceptance must be shown, though the goods were in the possession of the vendee at the time of the agreement to sell.*

Upon the accounting of an assignee he was allowed to apply as a payment on a note for $200 held by one of the creditors the price of a horse, wagon and harness alleged to have been sold to the creditor by the assignee. Subsequent to the making of the assignment this property had been placed in the creditor's hands, and he had been authorized to sell it and apply the proceeds upon the note. In April, 1881, the creditor and the assignee agreed verbally that the former should take the property which was in his hands in satisfaction of the note. The wagon had been sold in the previous September for seventy-five dollars, and the horse was thereafter sold in July for $140.

*Held*, that the assignee could not enforce the agreement to take the property in satisfaction of the note as it was void under the statute of frauds, no act on the part of the creditor which could be treated as an acceptance of the property having been shown.

APPEAL by Jeremiah C. Lamphier, a creditor of the assignor, from the decree of the county judge of Erie county, discharging the assignee.

On the 20th of August, 1879, De Witt C. Hoover made an assignment to George H. Hoover, and one Getz, for the benefit of his creditors. Getz afterwards died and the survivor became sole assignee. In the course of the subsequent proceedings the

county judge made an order stating the amount of money in the hands of the assignee to be applied to the payment of debts, and directing payment thereof to the creditors entitled to it, according to their *pro rata* shares, and specifying the amounts to be paid to them respectively. The amount thus specified for the appellant was $281.28. Afterwards the assignee made his report to the County Court that he had executed that order by paying to the creditors the amounts so directed to be paid ; that the amount to which the appellant was entitled was paid by the sale to him some time previously of a horse, wagon and harness, in satisfaction of his note of $200, and by the tender to him of the amount due on another note of $100, and on his refusal to accept, such latter amount that the assignee had deposited the same with the county treasurer to the credit of the appellant, and taken the treasurer's receipt, as directed by the order, and had so advised the appellant. Thereupon the latter presented an affidavit stating reasons why he should be heard in the matter, and denying any satisfaction of his $200 note, as claimed by the assignee. And the County Court directed that the matter in question be tried before the court. Trial was had, and resulted in a decree discharging the assignee, from which this appeal is taken.

*E. B. Vedder*, for J. C. Lamphier, creditor, appellant.

*Norris Morey*, for the assignee, respondent.

Bradley, J. :

The appellant held a note of $200 made by the assignor, and another note of $100, made by him, and indorsed by George H. Hoover, who afterward became such assignee.

In September, 1879, the assignor placed in possession of the appellant a horse, wagon and harness, to dispose of and apply the proceeds in payment of those notes, and the latter received them for that purpose. This was done with the consent of the mother-in-law of the assignor, who owned that property. And he informed the assignee of this transaction with the appellant. About the first of August, 1880, the appellant offered to the assignor, to give up to him and satisfy the $200 note for the property, who said he was willing, if the assignee was, to do it, but the attention of the latter

was not called to the offer. The assignee testified to a conversation had between him and the appellant in April, 1881, which fairly construed was in terms an offer on the part of the latter to take the property in satisfaction of the $200 note, and an acceptance by the assignee of the offer, which was distinctly contradicted by the testimony of the appellant. The County Court decided that the offer was so made and accepted, and we treat that finding so made as the fact.

Then follows the contention of the appellant's counsel that the agreement, not being in writing and no delivery or acceptance of the property pursuant to it having been made, was within the statute of frauds and ineffectual to vest any right in either party under it. At that time the appellant had the horse and harness in his possession. He had sold the wagon in September before for seventy-five dollars; and in July, 1881, he sold the horse for $140. This trial was had in December, 1881, and the County Court held that the oral agreement was, and became effectual to vest the title to the property in the appellant, because he then had it in his possession; that such possession thereafter must be deemed to be, and the subsequent sale of the horse to have been made by him as owner, and therefore be treated as an acceptance under that agreement of sale. It was upon this ground that the court declared that the note was paid and made the decree in question.

It is difficult to see how that position of the court below can be supported. The purpose of the statute was to require something more than mere words to make a contract within it valid, when not evidenced by writing. Here no act whatever appears of delivery, receipt or acceptance. The fact that the property was in the possession of the appellant may have obviated the necessity of any act of delivery on the part of the assignee, further than a recognition and assent by him of an act of acceptance by the appellant under the agreement. But some act on the part of the latter which may be construed as an unqualified acceptance was essential to constitute a sale and purchase. That may be evidenced by an act inconsistent with any other relation than that of owner of the property, such as a pledge or sale of it, or retaining and using the property after its receipt by the buyer. There must, however, be both a receipt and acceptance by him to be effectual to vest the

title, and that must be manifested by some act as distinguished from, and in addition to the words of the parties constituting the agreement. (*Caulkins* v. *Hellman*, 47 N. Y., 449 ; 7 Am. R., 461 ; *Stone* v. *Browning*, 51 N. Y., 211 ; *Cooke* v. *Millard*, 65 id., 352 ; 22 Am. R., 619 and cases there cited ; *Allard* v. *Greasert*, 61 N. Y., 1 [distinguishing *Cross* v. *O'Donnell*, 44 id., 661] ; *Hewes* v. *Jordan*, 39 Md., 472 ; 17 Am. R., 578.)

The receipt of property is not necessarily an acceptance; they are or may be distinct and different acts of the buyer. While the acceptance includes the receipt, the latter does not include the former, but may be evidence of acceptance if the circumstances under which the property is received permit. (*Remick* v. *Sandford*, 120 Mass., 309 ; *Heermance* v. *Taylor*, 14 Hun, 149 ; *Hewes* v. *Jordan*, 39 Md., 582 ; *Curtis* v. *Pugh*, 10 Ad. & Ellis [N. S.], 111 ; *Ham* v. *Van Orden*, 4 Hun. 709 ; and cases before cited.)

At the time this agreement was made the appellant had possession of the property as bailee, with full power to sell it and apply the proceeds on his claim, and that relation and right existed at the time of the sale of the horse, and were necessarily not affected by the agreement in question. There is nothing appearing in the record which characterized any act of his in respect to the property as that of owner, as distinguished from that as such bailee. The agreement itself did not change his relation to the property or the character of his possession. Simply saying that what he did with the property came within his power and authority as bailee of it, which is all that can be said, does not permit the conclusion that he has by any *act* accepted the property under the oral agreement of sale. That agreement therefore is not supported by any act, but rests wholly on the force of the words used by the parties to express it. And by giving effect to it as a sale and purchase of the property, not only the language of the statute, but the beneficial purpose and policy of it are defeated. (*Shindler* v. *Houston*, 1 N. Y., 261.) The assignee, having the burden, failed to show title to the property in the appellant under the agreement in question, or that the $200 note was paid. The analogy between the delivery and possession of property requisite to constitute a pledge, and the delivery and acceptance required to effectuate a sale within the purpose of the statute of frauds is not such as to permit the rule which may be

applied in the former to necessarily govern in the latter. The reasoning of the court in *Markham* v. *Jaudon* (41 N. Y., 241, 242), in respect to a pledge has no material application to this case. The question of application of the proceeds of the property on the note, is not here for consideration. The assignee, so far as appears, has acted in good faith in his effort to close the trust.

The decree of the County Court appealed from should be reversed.

SMITH, P. J., BARKER and HAIGHT, JJ., concurred.

Adjudication reversed, and a rehearing before the County Court of Erie county ordered; costs of this appeal payable out of the fund in the hands of the assignee, to abide the event.