DANIEL G. BRADLEY and GEORGE A. SUTHERLAND, Respondents, *v.* BETHUEL C. WHEELER and HORACE INGERSOLL, Appellants.

At common law, a mere contract for the sale of personal property, when nothing remains to be done by the vendor, transfers the title, without payment or delivery.

A simple computation to ascertain the gross amount of consideration, all the elements of that computation being already ascertained, is not such a thing remaining to be done as will prevent title passing.

Where the vendors contract merely to move the goods to a specified place, the moment this is done, and the purchaser assumes charge thereof and takes actual possession of any portion, the statute of frauds is satisfied.

If there is no uncertainty as to the terms of the contract, usage cannot be proved to contradict or qualify its provisions. Usage is only resorted to for the purpose of ascertaining with greater certainty the intent of the parties; not to contravene their express stipulations.

(Argued January 14; decided May 6, 1871.)

APPEAL from an order of the New York Superior Court, at General Term, affirming a judgment entered upon a verdict in favor of the plaintiffs.

This was an action brought in the Superior Court of the city of New York, to recover the price of a cargo of hay, consisting of 1,197 bales of good hay and thirty bales of clover, claimed to have been sold and delivered to the defendants on or about the 9th day of December, 1863, at specified prices per pound. The defendants, by their answer, admitted that the plaintiffs, at the time mentioned, sold and delivered to them 122 bales of shipping hay and fourteen bales of clover, at those prices, for which they offered to pay; and they denied each and every other allegation in the complaint. The issue was tried before Judge GARVIN and a jury. It appeared on the trial that, after a part of the cargo had been received by the defendants into their possession, the residue thereof, as well as that portion, was destroyed by fire. There was conflicting evidence as to the terms of the contract, and particularly on the question whether the title to the whole of the cargo had passed to the defendants at the time of the fire; and a verdict was found in favor of the plaintiffs. A motion for a new trial on the minutes was denied; the order denying it, and the judgment entered on the verdict, were, on appeal, affirmed by the General Term of that court, and the case is brought to this court by an appeal by the defendants from the judgment of affirmance. The facts appear from the opinion of the court. The case below is reported, 4 Robertson, 18.

*Erastus Cooke*, for the appellants, cited, on the question of title, Story on Sales, § 296; 2 Kent, 495; *Hansen* v. *Meyer* (6 East, 614); *Joyce* v. *Adams* (8 N. Y., 291); *Field* v. *Morse*

(Lalor, 418).   That evidence of custom should have been received, he cited *Zagury* v. *Farnall* (2 Campb., 240); *Sewall* v. *Gibbs* (1 Hall, 602); *Conner* v. *Robinson* (2 Hill [S. Car.], 354); *Hunton* v. *Locke* (5 Hill, 437); *Wigglesworth* v. *Dallison* (1 Smith's Lead. Cas., 821); 2 Greenl. Ev., § 251.

*Samuel Hand*, for the respondents, that title passed, cited *Terry* v. *Wheeler* (25 N. Y., 524); *Olyphant* v. *Baker* (5 Denio, 379); *Wood* v. *Curtis* (31 How., 4); *Leonard* v. *Davis* (1 Black, 482); *Crofoot* v. *Bennett* (2 Comst., 258); *Dexter* v. *Bevins* (42 Barb., 573); *Turley* v. *Bates* (2 Hurl. & Colt., 200); *Young* v. *Matthews* (Law Rep., 2 C. P., 127); *Bates* v. *Conkling* (10 Wend., 389); *Kimberly* v. *Patchin* (19 N. Y., 330); *Russell* v. *Carrington* (42 id., 119); *Curtis* v. *Prenderville* (53 Barb., 186); *Dodsley* v. *Varley* (12 Ad. & Ell., 632); *Simmonds* v. *Humble* (13 C. B., N. S., 258); *McKingler* v. *Dunlop* (1 Seld., 54); *Boutwell* v. *O'Keefe* (32 Barb., 434); *Sprague* v. *Blake* (20 Wend., 63); *Waldron* v. *Romaine* (22 N. Y., 368); *Rodgers* v. *Phillips* (40 id., 524); *Mills* v. *Hunt* (20 Wend., 431); *Outwater* v. *Dodge* (6 id., 397).   That evidence of custom was properly excluded, he cited *Moore* v. *Higgins* (34 N. Y., 422); *Wheeler* v. *Newbould* (16 id., 401); *Markham* v. *Jaudon* (41 id., 235).

LOTT, Ch. C.   It has been established, by the verdict of the jury in this case, upon conflicting evidence, under instructions from the court, to which there was not any exception taken, that a contract was made for the sale by the plaintiffs, and the purchase by the defendants, of the whole cargo of hay, at a specified price per pound (the price for the shipping hay being greater than for the clover); that it was delivered at the place agreed upon, and taken under the charge and control of the defendants; that a part of it was taken into their actual possession; and that nothing was to be done by the plaintiffs to ascertain its quantity, quality, or identity, or to put it in the condition required by the terms of the contract.

The General Term refused to set aside that verdict; and it

appears, by the case, that there was sufficient evidence to sustain it.

The jury were instructed that, if the facts above stated were found by them, then the title to the whole of the cargo passed, and the plaintiffs were entitled to recover. There was no exception to this, or any other, part of that charge; but several exceptions were taken to the refusal of the court to charge as requested, on certain propositions submitted to him for that purpose, and to the rejection of certain testimony offered on behalf of the defendants.

It becomes necessary, therefore, to refer such of them as are now relied on, as grounds of reversal. The cargo was, at the time of the negotiation for its sale, on board of a barge lying in the North river, and the defendants on the trial claimed that it was a part of the contract that the plaintiffs should transfer and put it on board of a certain schooner pointed out and designated by the defendants; that it was to be inspected, and that the plaintiffs reserved the right to sell a part of the clover hay; that they were only to take the balance. The plaintiffs, on the other hand, claimed that all they were required to do, in reference to the delivery was to move or "haul" the barge to and alongside of the schooner; that the defendants were themselves then and there to unload the cargo; that the plaintiffs were to do nothing further toward its delivery; that there was an absolute sale of the whole cargo, without any reservation of any part thereof, and without any agreement for its inspection. There was conflicting evidence on those questions.

At the close of the testimony, and before the charge, the defendants' counsel requested the court to charge the jury upon nine different written propositions, among which were the following:

1st. An action for goods sold and delivered cannot be sustained where there has not been an actual delivery.

2d. There was in this case no delivery of any of the hay purchased, except that which was placed in the schooner.

5th. The rule of law is, that where anything remains to be done to ascertain the quantity or quality, the title does not pass.

9th. That the plaintiffs can only recover for the hay actually delivered on board the schooner.

After the charge was given, the counsel again called the attention of the judge to those propositions, and asked him to charge them in the affirmative or negative. The judge thereupon stated that he could not charge the first, second, third or fourth requests, except as already charged; that the fifth was true, if anything remained to be done by the seller, but that he could not charge it in the terms asked, because it was too general; and made a further charge in reference to the eighth, substantially as asked, and said nothing in relation to the rest. The counsel for the defendants specifically excepted to the refusal of the court to charge as requested, as to each of the requests so submitted to the court, and to each of said refusals separately.

The exceptions to the third, fourth, six, seventh and eighth requests or propositions are not relied on in the appellants' points. I have not deemed it necessary to set them forth, assuming that they are abandoned. The others will be briefly considered. The first, as an abstract proposition of law, is too broad. An *actual* delivery of the whole of the property sold is not necessary. Assuming a delivery to be a part of the contract, an actual acceptance of a part in the name of the whole would be sufficient. Nor is such delivery requisite where the sale is complete, and there is a manifest intention to pass the title without it. (See *Terry* v. *Wheeler*, 25 N. Y. Rep., 520 ; *Russel* v. *Carrington*, 42 id., 118.) But if it were otherwise, the court in this case charged substantially in conformity to the request. The second involved a question of fact, and was therefore properly refused. The fifth proposition was too general, and the qualification that it was true, if anything remained to be done by the seller, was proper. The ninth was not correct. If the plaintiffs' version of the contract was correct, and that nothing remained to be done

by them in or toward its execution, the title passed, and a recovery for the whole cargo was proper.

In reference to the other exceptions, it is sufficient, without referring to them specifically, to say that they have been considered, and none of them are well taken. It then only remains to be considered whether the court erred in excluding the defendants' offer of evidence to show that there is a general, well-known custom in the port of New York, that hay should be inspected before delivery.

Each of the parties claimed that there was a special contract, and the evidence of the defendants tended to show that it was a part of the contract that the hay should be inspected, and the court charged that if it was, then the title did not pass.

It is evident, therefore, that the defendants, according to the testimony introduced by themselves, did not deal in reference to any custom, and there being a special contract shown, no local custom can change its terms, or vary the rights and obligations of the parties under it. But if it was admissible in any case, it could not affect the plaintiffs without proof that they had knowledge or notice of it, and the offer did not, in express terms or by implication, or its fair construction, include such proof. The evidence was, therefore, properly rejected.

The views above expressed lead to the conclusion that there is no ground for the reversal of the judgment. It must, therefore, be affirmed, with costs.

EARL, C. The plaintiffs, on the 9th day of December, 1863, had, in the city of New York, a barge load of hay, consisting of 1,197 bales of good and shipping hay and thirty bales of black clover hay, and they met defendant Wheeler, on one of the piers of the North river, near to and in plain sight of the barge. Some of the bales were in the hold of the vessel and the rest on deck, and the weight of each bale was marked upon it. One of the plaintiffs then had in his possession, but did not show to Wheeler, the tallies made by himself, show-

ing the number of the bales and the weight of each bale. They then entered into negotiation with Wheeler for the sale of all the hay to him, stating to him that there were about 1,200 bales. He offered them $1.30 per hundred for all the good and shipping hay, and $1.00 per hundred for the clover hay, and offered to take all the hay at the weights marked upon the bales, deducting five pounds from each bale. The plaintiffs accepted the offer and said it was a bargain, and asked Wheeler where he would have the hay put, and he told them to haul the barge up alongside of a schooner which was near by, and he would send a man to take charge of it, and he was going to put part of it upon the schooner. The plaintiffs had chartered the barge with her crew for the sum of $200, to deliver this cargo of hay in New York. The plaintiffs then caused the barge to be placed aside of the schooner, as directed, and the defendants sent a man to take charge of and superintend the delivery of the hay from the barge to the schooner. The crew of the barge commenced unloading the hay from the barge into the schooner, under the supervision of the defendants' agent, and after one hundred and thirty-six bales of hay had been thus delivered, a fire broke out near by and destroyed both vessels and all the hay.

In this brief statement I have given the facts as the evidence on the part of the plaintiffs tended to show them, as the jury by their verdict found for the plaintiffs. The defendants claim that they should pay for only the 136 bales, and the plaintiffs claim that they should pay for all the hay; and the main question to be determined by us is whether what took place between the parties in reference to the hay was sufficient to vest the title thereto in the defendants. It is frequently difficult to determine whether the facts surrounding a contract of sale are sufficient to change the title to the property sold. It sometimes depends upon the intention of the parties, and the parties may provide in their contract that the title shall pass, when the facts would not, in the absence of such a stipulation, show a change. (*Kimberly* v. *Patchin*, 19 N. Y., 330 ; *Russell* v. *Carrington*, 42 N. Y., 119; *Dexter*

v. *Bevins*, 42 Barb., 373 ; *Young* v. *Mathews*, Law Reps., 2 C. P., 127.) But it is the general rule of the common law that a mere contract for the sale of goods, where nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid nor the goods sold delivered to the purchaser. (*Olyphant* v. *Baker*, 5 Denio., 379; *Terry* v. *Wheeler*, 25 N. Y., 520; *Leonard* v. *Davis*, 1 Black, 476, 483.) Chancellor Kent, in his Commentaries, vol. 2, p. 499, says : " The common law very reasonably fixes the risk where the title resides, and when the bargain is made and rendered binding by giving earnest or by part payment or part delivery or by a compliance with the requisitions of the statute of frauds, the property, and with it the risk, attach to the purchaser." The rule, as here laid down, should, however, be taken with this qualification, that nothing remains to be done by the seller to ascertain the identity, quantity or quality, of the article sold, or to put it in the condition which the terms of the contract require. (*Terry* v. *Wheeler*, *supra*.) Except for the purpose of satisfying the statute of frauds, the seller is not bound to deliver the property sold, unless he has agreed to do so, and the buyer must take it where it is at the time of the sale. (Story on Sales, § 301.) If the contract of sale in this case had been made in such form as to be binding within the statute of frauds, without any agreement to deliver, the defendants would have been bound to have taken the hay where it was upon the barge. The only delivery the plaintiffs agreed to make in this case, was to place the barge with the hay aside of the schooner, and this was all they were bound to make. The moment this was done, and the defendants took possession of the hay or any part of it, the statute of frauds was satisfied and the sale was complete. There was nothing more for the sellers to do. They had sold the entire cargo and knew the weights of the bales, and all that remained to be done was an arithmetical calculation, to ascertain the gross sum to be paid for the hay. This was not sufficient to prevent the title from passing. It is said in

Story on Sales (§ 298), that "where everything which is material has been done by the seller, and the goods have been identified by weighing or measuring or counting, the fact that some trifling and insignificant act has not been done, which might strictly be required, will not prevent the title from passing to the vendee." In *Tansley* v. *Turner* (29 Eng. Com. Law, 288, 2 Bing., 151), the plaintiff had sold all the ash trees, which he had felled upon certain lands, at 1 s. 7½ d., per cubic foot, and the length and girth of the trees had been measured, and the cubic contents of each tree had been ascertained and put down on paper by the plaintiff. But the total cubic contents of the trees had not been ascertained nor had the price of any tree nor of all the trees. The vendee had removed some of the trees and then became a bankrupt, and it was held that the sale was complete, and that the remaining trees passed to his assignee. Chief Justice TINDAL said: "I agree that if anything remained to be done by the seller, the property had not passed. But when I find that all that remained was to ascertain the total number of cubic feet, and that the number for each tree had been ascertained, the mere adding up the whole is too trifling an incident to authorize us to say the measurement was not complete."

I therefore conclude that, upon the evidence given in this case, the title to the hay was in the defendants at the time of the fire; and this brings me to the only other question in the case. On the trial the defendants offered to show that there was a well known and uniform custom, in the port of New York, that hay should be inspected before delivery. This evidence was excluded, and the defendants claim that in this there was error. The decisions of the courts, as to the proof of usage for the purpose of explaining or controlling commercial and other contracts, are somewhat conflicting and irreconcilable. As to the admissability of usages in general, the later cases show that the dislike to them, which seems always to have characterized the ablest judges in this country, and particularly in this State, is now becoming general; and it is now quite well settled that usage or custom cannot be proved

to contravene a rule of law, or to alter or contradict the express or implied terms of a contract, or to make the legal rights or liabilities of the parties to a contract other than they are by the common law. In *Sewall* v. *Gibbs* (1 *Hall*, 602), OAKLEY, J., says : " That all contracts made in the ordinary course of business, without particular stipulations, expressed or implied, are presumed to be made in reference to any existing usage or custom relating to such trade, and that it is always competent for a party to resort to such usage, not to vary, but to ascertain and fix the terms of the contract." In *Hinton* v. *Locke* (5 Hill, 437), BRONSON, J., says : " Usage can never be set up in contravention of the contract. But when there is nothing in the agreement to exclude the inference, the parties are always presumed to contract in reference to the usage or custom which prevails in the particular trade or business to which the contract relates ; and the usage is admissible for the purpose of ascertaining with greater certainty what was intended by the parties." (See also *Wheeler* v. *Newbould*, 16 N. Y., 401 ; *Higgins* v. *Moore*, 34 N.Y., 422 ; *Markham* v. *Jaudon*, 41 N. Y., 235 ; 1 Smith's Leading Cases, 4th Am. Ed., 564.)

Here there was no uncertainty as to the terms of the contract, and the parties had provided what the plaintiffs should do for a delivery of the hay, and all the contract required them to do was to place the barge with the hay beside the schooner. Hence the custom offered to be proved would have contradicted or varied the terms of the contract, and was therefore inadmissible. But there is another reason why it was properly excluded. There was no offer to show that the custom required the plaintiffs to have the hay inspected, or that it should be inspected before the title could pass, and hence the evidence offered was wholly immaterial. If it had been received, it would still have left a valid contract of sale, in reference to which the plaintiffs had done all they were bound to do, and the proof would still have shown that the title to the hay had passed the defendants. If upon any inspection which the defendants had seen fit to make, they had ascer-

tained that any of the bales did not come up to the require-
ments of the contract, these they could have rejected and
returned to the plaintiffs, retaining, as they would be obliged
to, all that answered to the contract.

I am therefore of the opionion that the judgment should
be affirmed with costs.

All concur for affirmance.

Judgment affirmed, with costs.